## *TOLEDO AND OHIO CENTRAL RY. CO. v. FOSTORIA (CITY).

1. **JURISDICTIONAL FACTS TO BE DECIDED BEFORE RIGHT OF WAY CAN BE GRANTED.**

A city, for the purpose of opening and extending certain streets, asked for the appropriation of the right to cross the right of way of a railway company, and further to appropriate the right to cross the lands owned and used by said company in the operation of the railway;    Held:    Before the court is authorized to render a judgment of condemnation, three jurisdictional facts must be first heard and determined, viz.:

*This judgment was affirmed by the Supreme Court in 56 O. S , 726; unreported.

(1) That the city council has duly passed a resolution or ordinance by a two-thirds vote, authorizing the appropriation.

(2) That the appropriation will not necessarily interfere with the reasonable use of such right of way or land by the railway company.

(3) That at least five days' notice of the time and place of the hearing of the application has been duly served.

**2.** MEASURE OF DAMAGES FOR APPROPRIATING A STREET ACROSS RAILWAY LANDS.

In such a case, the measure of damages is:

First—The land actually used and taken for each street.

Second—The burden that will be imposed upon the railroad company, by the opening of each street that the statutes of the state require the railway company to maintain, etc.

Third—The actual damages sustained to the remainder of the railroad yard, by reason of the interference by the city with the use of the yard, in the opening and extension of each street, without reference to the opening and extension of any other street.

Query: as to validity of bond to pay all damages.

Error to the Court of Common Pleas of Seneca county.

SENEY, J.

In the year 1889, the city of Fostoria, this county, filed a written application in the probate court of this county, asking for the appropriation of the right to cross the right of way of The Toledo and Ohio Central Railway, and further to appropriate the right to cross the lands owned and used by said company in the operation of its railway, for the purpose of opening and extending certain streets in said city, viz: North street, Center street, Tiffin street and South street.

A motion was interposed by said railroad company to dismiss the application, for the reason as alleged in said motion that the probate court had no jurisdiction, which motion was overruled, and an exception taken by the railroad company. Afterward a motion was interposed by the city to withdraw from said application so much thereof as referred to South street; which motion was sustained, and South street withdrawn from further consideration. Thereupon said proceeding was submitted to at least two juries, which verdicts were set aside by the court.

Finally in said court a verdict was obtained which was approved by the court, and upon which a judgment was rendered against the city.

From this order and judgment the railroad company appealed to the common pleas court. The proceeding was submitted to the court and jury, which resulted in a verdict against the city. The company filed a motion for a new trial, assigning various grounds, which were overruled, exception taken, and judgment rendered upon the verdict.

A petition in error was filed in this court to reverse the action of the court below, assigning twenty-seven claimed errors. The question hence arises for disposition by this court, has any error intervened in the proceeding to the material prejudice of the railroad company? The proceeding is brought under and governed by secs. 2232 to 2261, Rev. Stat. These sections authorize a city or village of the state to exercise the right of eminent domain, and in so doing the power thus conferred (as has been repeatedly held) must be strictly construed. Singular as it may seem at this late day, by a careful reading of these sections, it will be found that the course of procedure provided by these sections is very vague and uncertain.

Section 2236, provides, "upon the passage of the resolution by the requisite majority (two-thirds of the city council), application in writing shall be made to the court of common pleas of the proper county, or to the judge thereof in vacation, or to the probate court of the county, which application shall describe as correctly as possible, the property to be taken, the object proposed, and the name of the owner of each lot or parcel of the property."

Section 2238, provides: "If it appear to the court or judge that such notice (the notice referred to in section 2237) has been served five days before the time of the application, or has been published as provided in the preceding section, and that such notice is reasonably specific and certain, the court or judge may set a time for the inquiry into the assessment of compensation, etc., etc."

Section 2233, provides: "The power to appropriate may also be exercised for the purpose of opening or extending streets or alleys across railway tracks and lands leased or owned by railway companies, where such appropriation will not materially interfere with the reasonable use of such road or land by the railroad company, etc., etc."

It will be noticed that if a strict construction is applied to these sections, before the city can have a judgment of condemnation against a railroad company three things are necessary.

First—A passage of a resolution or ordinance by a city council by a two-thirds vote authorizing the appropriation.

Second—That the appropriation will not unnecessarily interfere with the reasonable use of such road or land by the railroad company.

Third—Notice of time, place and service.

Upon each one of these questions the railroad company have the undoubted right to be heard, and contest them, and if successful in the contest upon one or all of them, the legal right to a judgment of condemnation does not exist.

Who shall hear and determine these questions? The sections are silent, excepting only in so far as the question as to notice is concerned. This is provided by section 2238. We think each of these questions are jurisdictional facts that must exist before the right to take the property can be adjudged, and being jurisdictional facts, the power is inherent in the court to determine the jurisdiction independent of the sections.

In what course of the proceedings should this jurisdiction be determined, the sections are silent; so that, while at any time before the judgment is rendered will suffice, the better practice probably would be before the jury is drawn. In the case at bar, we are unable to find in the record any finding as to these jurisdictional facts except a finding as to notice. The proceeding was brought in the probate court. The question now arises, does the determination of these jurisdictional facts end with the finding of the probate court, from which decision error alone will lie? Or does the appeal to the common pleas court, as provided by section 2254, bring these jurisdictional facts before the court for determination?

Section 2254 provides, "When the proceedings are had in the probate court, any party interested in the inquiry and assessment may take an appeal to the court of common pleas, and thereupon the same proceedings shall be had as if the application had originally been made in that court, except that the corporation shall not be required to give notice of the application, and the inquiry and assessment shall be limited to the case of the party taking the appeal, etc."

We are inclined to hold, and do hold, that under this section the appeal brings these jurisdictional facts before the court of common pleas for determination.

The record is silent as to any determination by the court of common pleas as to these facts, and that court erred in rendering judgment without these facts being determined.

The ordinance authorizing this proceeding is composed of several sections. One section provides for the opening and extension of Center street; one provides for the opening and extension of Tiffin street; one provides for the opening and extension of South street, and one provides for the opening and extension of North street; and section 6 of the ordinance authorizes the city solicitor to bring the proceeding.

It is urged in argument by the plaintiff in error (railroad company), that as South street was withdrawn from the application by the order of the probate court, the proceeding should have been dismissed, for the reason that the city solicitor was only authorized to condemn all or none.

We do not think this position tenable. As we have noticed, each street is provided for by a separate section, and under this ordinance the city solicitor, so far as the argument is concerned, was authorized to bring the proceeding for one street, two streets, or all. The only doubtful question is: Can the proceedings be carried on for more than one street? In other words, can you unite in one proceeding two or more streets? If you can, we are not in any doubt but that, when done, each street, so far as assessing of compensation and damages are concerned, should be treated as separate and distinct from the other streets, the same as if the proceeding was being carried on for that street alone.

Section 2263 provides, "for the assessing of the cost and expense of opening a street upon all the taxable property, etc., of the city."

Section 2264 provides, "The council may decide to assess the cost and expense on all the taxable property of the city, but may assess it on the abutting and such adjacent and contiguous, or other benefited lots and lands in the corporation, either in proportion to the benefits which may result from the improvement, or according to the value of the property assessed, or by the foot front of the property bounding and abutting upon the improvement, etc."

How could the provision of section 2264 be enforced unless each street is kept separate and distinct from the other streets; and damages and compensation are assessed without any reference to the other streets.

To my mind, more difficulty is experienced in this: as to whether this ordinance, in connection with what was done, would authorize the jurisdictional fact to be found, viz.: that the ordinance authorizes the appropriation proceeding.

By section 6 of the ordinance it provides, "The amount of the compensation to be found, together with the total cost of the action or actions, shall be assessed against the owner of the lands lying east of said Columbus, Hocking Valley & Toledo Railway Company, etc."

It is admitted that this owner has given bond to meet this expense.

It is claimed that the giving of this bond is authorized by section 2251, which provides, "Any person interested in the appropriation of private land for a street, etc., may, before the passage of the ordinance, etc., execute his bond to the corporation to the acceptance of the council, conditional for the payment of all the damages which may be assessed by the jury, etc., etc."

Query—The land sought to be appropriated in this proceeding is land appropriated prior thereto for a public use; being so, is it private land in the sense of this section? If not, the person upon the bond could not be held; and, second query— If he could not be held, the ordinance is passed, conditioned you may say, that he will pay the damages. If this condition is of no force, does it not defeat the entire ordinance? Again, this ordinance, as we have seen, provides that the owner shall pay all the damages. Does that mean the damages for the opening of all the streets, and not each street separate? If it means for all the streets, first, had the council power to pass an ordinance to that effect; and if it had, would the city solicitor have the right to withdraw South street from the application, and still hold the owner for the damages accruing to the opening of the three streets instead of four? These are questions that have suggested themselves to my mind upon an examination of the matter, but are not considered by the court, as they are not presented by the record; but, as the case will be remanded for another trial, I have deemed it appropriate to suggest them.

Evidence was admitted to prove the damages growing out of the appropriation of this tenor. The railroad company owned and was using a part of the land as a right of way. It owned and was using the remainder of the land, viz.: 2,000 feet in length and 100 feet in width as a railroad yard, with tracks, depots, etc., thereon.

Questions were asked and answered by railroad experts (over objection) as to the value of the land as it now was, for railroad purposes.

Questions were asked and answered by railroad experts, (over objection), as to the value of the land when the streets, (three in number), were opened. Questions were asked and answered, (over objection), as to the value of the land before the opening of the streets, and the value of the land after the streets were opened, basing the value of the land for purposes other than railroad purposes. Questions were asked and not permitted to be answered (exceptions taken) to the effect as to what additional burdens would be placed upon the railroad company by the opening of the streets, such as making and keeping up sidewalks, making and keeping up crossings, etc., etc. The charge of the court excepted to was consistent with the rules of evidence adopted by the court. Was the action of the court erroneous in this regard? This involves the question as to the measure of damages in this class of cases.

We know of no authority, and none has been cited directly in point; so we place our opinion upon the principles that have been indirectly elicited from other cases. It is claimed by the defendant in error, that the case of L. S. & M. S. Ry. v. Railroad, 30 O. S., 604, 625, settled the measure of damages in this case.

We think not. That case was one in which one railroad company, in appropriating the right of way over another railroad, sought to recover as damages, first, the expense of maintaining the crossing. It was held it could not be done. Why? Solely and alone because the statutes of the state made it the duty of both roads to bear this expense jointly; because the statutes make it a common burden to both. Second, what damages might follow to the entire railroad from delays in trains, collisions, etc.

This was denied. Why? Because too remote, and was entering into realms of speculation. The only question of damage entering into this case, and decided by that case, is: The value of the land actually occupied and taken by the opening of each of these streets. So that this is one element that enters into the measure of damages in this case.

Now, it must be borne in mind, when the city opens a street across railroad grounds, the burden of side-walk, flooring, cattle-guards, keeping crossings in repair is a burden cast alone upon the railroad company, by the statutes of the state, and not a common burden to be borne by the city and said railroad jointly, as in the case cited from 30 O. S., 604.

Then how stands it. In this same case, Johnson, Judge, cites the case of Old Colony R. R. v. Plymouth, 14 Gray, 155, which case was that of a municipal corporation, condemning a right of way for a public highway across a railroad track (similar in this respect to the case at bar), and it was held that the railroad was entitled to compensation for the expense of maintaining railroad signs, cattle-guards, flooring and keeping the crossing in repair. So that this is another element that enters into the measure of damages in this case, viz: such burdens as are imposed by the statutes of the state, where a railroad crosses a street in a city.

This leaves but one other element of damages to consider; remembering that the land sought to be appropriated runs across the railroad yard. What damages can or will a railroad sustain by reason of this act of the city. Can it be measured by the principle, how much less valuable will the remainder of the yard be after the opening of the street, than before? We think not. Why? It is appropriated already for a public use, viz: operating a railroad.

At any time before, as well as after the opening of the street, the railroad has the right to use it for railroad purposes. With this contingency hanging over it, it would be valueless for general purposes, but still valuable for railroad purposes. So that the damage the railroad company would sustain, if any, would be, how less valuable for railroad purposes has the yard become by reason of the opening of the street.

Not to be measured by fancy flights of imagination, such as the cutting of trains, delay of trains, etc., but by substantial facts, such as the actual expense caused by the city's interference with the use.

As said by Johnson, J., in the case already cited from 30 O. S., 604, 626: "If, in any given case, there are other consequential injuries not provided for by the act of 1860, incident to the appropriation, they may be considered if they are the cause of present and direct damages to the remaining property." And as said by Welch, J., in the case of Goodin et al. v. Cincinnati & Whitewater Co., 18 O. S., 169, 181: "The true value of anything is what it is worth when applied to its natural and legitimate use, its best and most valuable use."

And as said by the supreme court in the case of Dodson v. Cincinnati, 34 O. S., 277, "When such an easment has been appropriated, the land owner is entitled to be compensated for all the rights of which he has been deprived; but when he still retains substantial rights in the property, he is not entitled to be allowed the value of the land in fee-simple."

And as said by Stone, J., in the case of the Railroad Co. v. Dayton (city), 23 O. S., 519: "By the extension of the street, the land is subjected to an additional use, but the former use is not superseded, and in so far as it is interfered with, the question becomes one simply of compensation.

So to recapitulate, we hold the facts:

First—A passage of a resolution or ordinance by the city council by a two-thirds vote, authorizing the appropriation, etc.

Second—Notice of the time, place and service.

Third—That the appropriation will not necessarily interfere with the reasonable use of such road or land by the railroad company.

Is each a jurisdictional fact to be determined before the court is authorized to render a judgment of condemnation?

As to the measure of damages:

First—The land actually taken and used for each street.

Second—The burden that will be imposed upon the railroad company by the opening of each street, that the statutes of the state require the railroad company to maintain, etc.

Third—The actual damage sustained to the remainder of the railroad yard, by reason of the interference of the city with the use of the yard, in the opening and extension of each street, without reference to the extension of any other street.

Entertaining these views, the court below erred in the admission and rejection of evidence, and in its charge to the jury as the record shows, inconsistent with this opinion, for which the judgment will be reversed, the verdict set aside, new trial granted, with execution for costs awarded, and cause remanded for new trial and further proceedings in accordance with law.

Geo. E. Seney, Brewer & Brewer, A. W. Scott, for plaintiff in error.

J. M. Bever, City Solicitor, McCauley & Weller, Hon. A. J. Stackhouse, for defendant in error.